## J. HENRY EDMUNDS v. LOGAN M. BULLETT.

The contract of a plaintiff, who is the mayor of a city, for personal services and expenses in negotiating a purchase of a mortgage on lands within the limits of the city, for the defendant, with whom the contract has been made, is not illegal and void, as contrary to public policy, for the reason that in the contract the plaintiff agrees not to interfere with the defendant in his efforts to obtain an adjustment or reduction of taxes on said lands from the proper municipal authority, where it appears that the mayor has no power over the remission of taxes, and did no act to secure that end, nor exercised any influence in that direction over or upon the municipal body or officers having jurisdiction in such matter.

---

On contract. On rule to show cause why a new trial should not be granted.

Argued at June Term, 1896, before BEASLEY, CHIEF JUSTICE, and Justices MAGIE, GARRISON and LIPPINCOTT.

For the plaintiff, *Thomas E. French.*

For the defendant, *William E. Potter.*

The opinion of the court was delivered by

LIPPINCOTT, J. This action is brought by the plaintiff to recover from the defendant the sum of $750, due upon a contract between the plaintiff and the defendant. Upon the trial a verdict of the jury was returned for that sum with interest.

At the conclusion of the evidence for the plaintiff, the defendant moved for a nonsuit, which motion was denied. The defendant then produced his evidence, and the jury, after the argument of counsel and the charge of the court, returned a verdict for the balance due and interest thereon.

During the time of the transaction involved in this suit, covering a period of a few months in the latter part of the year 1892, the plaintiff was mayor of the city of Cape May, in this state.

In October, 1892, the Cape May Beach Company, a corporation, was the owner of a tract of land in the city of Cape May, known as the East Cape May beach. The defendant, in the latter part of October, 1892, being interested in this tract of land, but in a manner which does not appear, desired, if it could be done, to become the purchaser thereof. At this time there existed a mortgage on the property for the sum of $50,000, with about six years of accumulated arrearage of interest, amounting to $18,000. This mortgage was then in process of foreclosure. Besides, arrearages of taxes then amounted to about $2,800. These facts appear as undisputed in the evidence.

In this situation the defendant sent for the plaintiff, and, at an interview with him, desired him to ascertain the lowest cash price for which he could purchase the mortgage. This the plaintiff did and informed the defendant, but the de-

fendant failed to raise the necessary money to purchase the mortgage.

At this juncture, according to the evidence of the plaintiff, the defendant entered into a verbal agreement with him, that if the plaintiff would have the foreclosure discontinued, have all the arrearages of interest up to December 1st, 1892, discharged and canceled, settle the fees and costs of counsel in the foreclosure suit, obtain a reduction of interest on the mortgage from six to five per centum, payable each six months, and secure an extension of five years for the payment of the mortgage, the defendant would pay him $12,500. The contract was accepted by both parties, and it is sufficient to say, without any detail of facts, that the evidence of the plaintiff shows that the plaintiff wholly completed his part of the contract, and that defendant accepted the benefits and paid to the plaintiff the sum of $11,500 on account thereof. At the time of this payment some dispute arose between the plaintiff and defendant as to the terms of the contract. The defendant insisted that the plaintiff had agreed also to have the arrearage of taxes reduced to some reasonable and just sum. This insistment the plaintiff positively denied, and asserted that in his agreement with the defendant no reference whatever was made to this subject of taxes, and he then and there declined to enter into any arrangement in relation to them. He finally consented to wait until the taxes were reduced, for the payment of $1,000, part of the $12,500 due him, and he also said to the defendant that he would not interfere with the defendant in his efforts to obtain a just and reasonable reduction of taxes. It is conceded that the taxes were grossly excessive and based upon an entirely fictitious valuation of the property. It is also conceded that the mayor of the city of Cape May has no official rights to exercise, or official duties to perform, in relation to the imposition, reduction or collection of the taxes of the city. These rights and duties are imposed upon the council of the city and other municipal officers outside of the mayor, in accordance with the provisions of the charter. *Pamph. L.* 1875, *p.* 206. It is conceded that the

plaintiff, neither as mayor nor personally, took any action, nor exercised any influence whatever in favor of the reduction of these taxes. The sum of $250 was paid on account of the $1,000 remaining unpaid, leaving the balance of $750 still due.

The defendant, at the close of the plaintiff's case, moved a nonsuit, on the ground that the contract was contrary to public policy and therefore void.

It must be apparent, in law, that the contract, as it appeared in the evidence of the plaintiff, was one plainly legal and sufficient to sustain the action. It is much more than difficult to perceive the slightest reason why there should not be a recovery. The agreement was not one which at all pertained to the performance of the duties of his office as mayor; it was not in terms nor by implication calculated to interfere with the official action of the council nor the action of any other official in the discharge of his duties relating to the adjustment of taxes. No such intention can be gathered from this agreement; in fact, its very terms, as insisted upon by the plaintiff, expressly negative any such proposition. There cannot be found within the terms of this contract any violation of the public good of the city or anything injurious to society. The consent of the plaintiff to wait for the payment of the $1,000 until the defendant had embraced the opportunity to have the taxes reduced, was not even a part of the agreement for his services, for his contract, according to his evidence, had been entirely performed before this consent had been given, and it did not enter into the consideration; but if it had, it would not have rendered the contract illegal, for by this consent it was not provided that he should take any action whatever, either personal or official; he was simply to wait until an event to happen before part payment should be made of the consideration of a perfectly legitimate contract. No rule of law or public policy has been contravened, and until such a case has been established by judicial determination the contract cannot be held void.

The motion to nonsuit was properly refused.

On the part of the defence the evidence is such as to slightly vary the verbiage of the agreement. Except as to the matter of the reduction of taxes, there is no variance of proof whatever. The defendant is the only witness on this subject. In one part of his evidence he states as a part of the agreement, referring to the plaintiff, that "he should use his influence to get these taxes reduced." In another part it is expressed as a "part of your agreement to get these taxes reduced." I think the substance and meaning of the agreement, as the defendant states it, were that the plaintiff, who was the mayor, would aid the defendant in getting a reduction of the taxes. Such an agreement might be said to be one of bad taste, but the question whether illegal under all the circumstances would admit of much discussion. The taxes were conceded to have been unjustly imposed. The plaintiff had no power of remission, and no official act of his could be of any account whatever, and besides the fact is undisputed that the plaintiff did no act and exercised no influence, personal or official, in favor of the reduction.

But a discussion of whether the contract insisted upon by the defendant was illegal is entirely useless in the aspect which this case has assumed. The trial justice instructed the jury distinctly that if the jury found the contract to be as the defendant insisted upon, then it was an illegal and void contract and the plaintiff not entitled to recover thereon, thus leaving it to the jury to determine which of the two contracts should be found by them to be the true one. This instruction of the court placed the matter of law most favorably for the defendant, and he cannot on this rule complain that the jury found against him upon this matter of fact.

No error is found in the admission of evidence or in the charge of the trial justice.

The rule to show cause must be discharged.